# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| G.E. TRANSPORT S.P.A. and ATHENA S.A., | : : : | |
| Petitioners, | : : | Civil Action No.: 08-2042 (RMU) |
| v. | : : | Re Document No.: 11 |
| REPUBLIC OF ALBANIA, MINISTRY OF PUBLIC WORKS, TRANSPORT AND TELECOMMUNICATIONS, | : : : : : : | |
| Respondent. | : | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART WITHOUT PREJUDICE THE PETITIONERS' MOTION FOR A DEFAULT JUDGMENT AND CONFIRMATION OF ARBITRAL AWARD

## I. INTRODUCTION

This matter is before the court on the petitioners' motion for a default judgment and to confirm an arbitral award rendered against the respondent, the Republic of Albania, Ministry of Public Works, Transport and Telecommunications ("Albania"), pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("the New York Convention"), 21 U.S.T. 2517, T.I.A.S. No. 6997. The petitioners, who entered into a contract with Albania to modernize a portion of that nation's rail network, commenced an arbitration proceeding against Albania in the International Chamber of Commerce, International Court of Arbitration ("the ICA"), pursuant to an arbitration clause in the underlying agreement. At the conclusion of those proceedings, an ICA arbitral tribunal concluded that Albania had failed to fulfill its obligations under the contract and issued an arbitral award in excess of $20 million in favor of the petitioners. The petitioners commenced this proceeding to enforce the arbitral award

against Albania, which has declined to respond to the petition or otherwise participate in these proceedings. Because the petitioners have established to the court's satisfaction their entitlement to a default judgment and confirmation of the arbitral award, the court grants the petitioners' request for a default judgment and confirms the arbitral award in the amount of $20,664,933.30. The petitioners, however, have not explained to the court's satisfaction the basis of the pre-judgment interest award requested in the motion; accordingly, the court denies without prejudice the petitioners' request for prejudgment interest.

## II. FACTUAL & PROCEDURAL BACKGROUND[1]

This dispute arises out of a contract executed on September 15, 2003, under which the petitioners agreed to undertake the modernization of a portion of Albania's national railway network. *See* Petrs' Mot. at 1; *see generally* Decl. of Henry Weisburg in Support of Petrs' Mot. for Default J. & Confirmation of Arbitral Award ("Weisburg Decl."), Ex. B ("Contract Agreement"). The contract provided that Italian law governed its terms. Contract Agreement § 31. In addition, the contract included an arbitration clause requiring the parties to submit any dispute arising out of the contract to arbitration proceedings in Rome, Italy under the auspices of the ICA. *Id.* § 30.2. The arbitration rules of the ICA provide that any award issued by an ICA tribunal is binding upon the parties.[2] *See* Petrs' Mot. at 2.

---

[1] Because Albania has not entered an appearance in this case or filed a response to the petition or this motion, the court relies upon the petitioners' account of the factual history of this case.

[2] Article 28(6) of the ICA rules provides that "[e]very Award shall be binding on the parties" and that "[b]y submitting the dispute to arbitration under these Rules, the parties undertake to carry out any Award without delay and shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly by made." Int'l Chamber of Commerce, Rules of Arbitration, art. 28(6), http://www.iccwbo.org/uploadedFiles/Court/Arbitration/other/rules_arb_english.pdf.

On June 1, 2006, the petitioners filed a request for arbitration with the ICA, based on their determination that Albania no longer intended to honor its obligations under the contract. *Id*. Pursuant to the aforementioned arbitration clause, an arbitration proceeding was convened in Rome. *Id.* All of the parties to this action, including Albania, participated in the proceeding,[3] which was bifurcated into a phase on liability and a phase on damages. *Id*.

On October 1, 2007, the three-person arbitral tribunal issued a "Partial Award" in which it unanimously concluded that Albania had breached Article 1358 of the Italian Civil Code and was obliged to compensate the petitioners for the losses, including lost profits, caused by Albania's breach. *See* Weisburg Decl., Ex. A at 3. On July 28, 2008, the arbitral tribunal issued a unanimous "Final Award," in which it directed Albania to pay the petitioners €10,619,016.79 and $145,601.32 in lost profits suffered by petitioner G.E. Transportation S.p.A., €1,995,548.91 in lost profits suffered by petitioner Athena S.A., $328,500 in arbitration costs and €207,452.45 as reasonable defense costs. *Id.* at 33. This court refers to the "Partial Award" and the "Final Award" collectively as the "Arbitral Award."

Following the issuance of the Arbitral Award, Albania filed an application for the correction and interpretation of the award with the arbitral tribunal, which was denied. Petrs' Mot. at 3. Albania subsequently filed an appeal in the Court of Appeals in Rome seeking to overturn the Arbitral Award. *Id*. As an interim measure, Albania requested that the Court of Appeals suspend the Arbitral Award and declare it null and void under Italian law. *Id.*

Approximately two weeks after Albania commenced the Italian appeal proceedings, the petitioners commenced this action seeking an order confirming the Arbitral Award pursuant to the New York Convention. Petrs' Mot. at 3; *see generally* Pet. to Confirm Arbitration Award.

---

[3] The record indicates that an evidentiary hearing was conducted on May 21, 2007, during which both parties offered the testimony of expert witnesses. Weisburg Decl. ¶ 9. The parties submitted post-hearing memoranda based on the testimony adduced at the hearing. *Id*.

3

The petitioners filed an amended petition on December 3, 2008. *See generally* Am. Pet. to Confirm Arbitration Award. After Albania failed to respond within sixty days of service of the amended petition, the Clerk of the Court entered default on March 26, 2009. *See* Entry of Default (Mar. 26, 2009). The petitioners filed this motion on April 17, 2009, requesting that the court confirm the Arbitral Award and enter default judgment against Albania. *See generally* Petrs' Mot. Albania has declined to file any opposition to the motion. As of the date the petitioners filed their motion, Albania had not paid any portion of the Arbitral Award. Petrs' Mot. at 3.

On February 26, 2010, this court ordered the petitioners to submit a status report reflecting the current state of the Italian appeal proceedings, including whether the Italian court had granted Albania's request for interim relief. *See* Minute Order (Feb. 26, 2010). The petitioners responded on March 2, 2010, reporting that on January 26, 2010, the Court of Appeals in Rome had denied Albania's request to suspend enforcement of the Arbitral Award and remanded the case for a hearing on Albania's appeal on June 11, 2011. Petrs' Status Report (Mar. 2, 2010).[4] The petitioners state that "[b]ased on this remand, and the extremely slow pace of legal proceedings in Italy, Petitioners' Italian counsel now expects the proceedings initiated by Albania to continue until approximately 2014." *Id.*

### III. ANALYSIS

**A. Legal Standard for Default Judgment Against a Foreign State**

A court shall not enter a default judgment against a foreign state "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. §

---

[4] The petitioners attached to their status report a copy of the January 26, 2010 ruling of the Italian court, together with a certified translation of the decretal portion of that ruling. *See* Petrs' Status Report & Attach. A (Mar. 2, 2010).

1608(e); *see also Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 232 (D.C. Cir. 2003). This "satisfactory to the court" standard is identical to the standard for entry of default judgments against the United States under Federal Rule of Civil Procedure 55(d). *Hill v. Republic of Iraq*, 328 F.3d 680, 684 (D.C. Cir. 2003). In evaluating the plaintiffs' proof, the court may "accept as true the plaintiff[s'] uncontroverted evidence," *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 100 (D.D.C. 2000), including proof by affidavit, *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 19 (D.D.C. 2002).

### B. The Petitioners Have Demonstrated Their Entitlement to Confirmation of the Arbitral Award

#### 1. The Court Has Subject Matter Jurisdiction

Under the Foreign Sovereign Immunities Act ("FSIA"), "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citing *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 488-89 (1983)). One of the FSIA's specified exceptions concerns actions to confirm certain arbitration awards. *See* 28 U.S.C. § 1605(a)(6). Specifically, the FSIA provides that

> [a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is brought . . . to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

*Id.*

The arbitration exception to the FSIA applies to actions arising under the New York Convention, a multilateral treaty ratified by the United States which provides for the recognition

and enforcement of certain foreign arbitral awards.[5] *See Creighton Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 124 (D.C. Cir. 1999) (observing that "the New York Convention 'is exactly the sort of treaty Congress intended to include in the arbitration exception'") (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1018 (2d Cir. 1993)); *Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*, 421 F. Supp. 2d 87, 93-94 (D.D.C. 2006) (determining that the court had jurisdiction pursuant to the FSIA's arbitration exception over claims brought under the New York Convention).

The petitioners base their request for relief on the New York Convention, *see generally* Am. Pet., to which Italy (the place of the arbitration), the United States (the place where recognition is sought) and Albania are all contracting parties. *See* U.S. DEP'T OF STATE, TREATIES IN FORCE: A LIST OF TREATIES AND OTHER INTERNATIONAL AGREEMENTS OF THE UNITED STATES IN FORCE ON JANUARY 1, 2007, § 2 (Multilateral Agreements) at 12, *available at* http://www.state.gov/documents/organization/89668.pdf. Accordingly, the petitioners' claims arise under, and are governed by, the New York Convention. *Cf. Creighton Ltd.*, 181 F.3d at 121 (observing that "the critical element is the place of the award: if that place is in the territory of a party to the Convention, all other Convention states are required to recognize and enforce the award, regardless of the citizenship or domicile of the parties to the arbitration") (quoting RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 487 cmt. b). As a result, the FSIA's arbitration exception applies and provides the court with subject matter jurisdiction over the case. *See* 28 U.S.C. § 1330(a) (providing that "district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state . . . with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement"); *see also* 9 U.S.C. § 203 (providing

---

[5] The New York Convention is codified domestically at 9 U.S.C. §§ 201 *et seq.*

that the district courts have jurisdiction over actions arising under the New York Convention regardless of the amount in controversy).

### 2. The Court Has Personal Jurisdiction Over Albania

District courts may exercise personal jurisdiction over foreign states so long as subject matter jurisdiction exists over the claims at issue and service has been properly effected pursuant to 28 U.S.C. § 1608. 28 U.S.C. § 1330(b). As discussed above, the first prong of this test is satisfied because this court has subject matter jurisdiction pursuant to the FSIA's arbitration exception. *See supra* Part III.B.1. As for the second prong, § 1608 provides that service upon a foreign state can be made by delivering pleadings to the state "in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." *Id.* § 1608(a)(1). In the contract at issue here, the parties set forth a special arrangement for service on Albania, which provided that "[a]ny notice to be given to [Albania] . . . shall be in writing, and shall be sent by personal delivery, air post, special courier, cable, telegraph, telex or facsimile transmission to or left at [Albania's] address." Contract Agreement § 29.2; *see also Int'l Road Fed'n v. Embassy of the Dem. Rep. Congo*, 131 F. Supp. 2d 248, 251 (D.D.C. 2001) (observing that a contract provision specifying the method of providing notice constituted a "special arrangement for service" for purposes of § 1608(a)(1) (citing *Marlowe v. Argentine Naval Comm'n*, 604 F. Supp. 703, 708 (D.D.C. 1985)).

In accordance with the contract's notice provision, the petitioners served Albania with a copy of the Amended Petition and Notice of Petition on March 17, 2009 by DHL courier. *See*

Aff. in Supp. of Default, Ex. A.;[6] *see also Compagnie D'Enterprises CFE, S.A. v. Republic of Yemen*, 180 F. Supp. 2d 12, 14 (D.D.C. 2001) (concluding that the plaintiffs properly served the defendant under § 1608(a)(1) by delivering the summons and complaint to the defendant by DHL courier). The petitioners also delivered additional copies of the pleadings to Albania through U.S. mail on December 3, 2008. *See* Aff. in Supp of Default, Ex. B. Because the petitioners properly served Albania pursuant to § 1608(a)(1), and because the court has subject matter jurisdiction over this action, the court has personal jurisdiction over Albania. *See* 28 U.S.C. § 1330(b).

### 3. The New York Convention Authorizes Confirmation of the Arbitral Award

The New York Convention authorizes the recipient of a foreign arbitral award to seek confirmation of the award in federal court. *See* 9 U.S.C. § 207. The Convention provides that the court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* Such grounds include the following: incapacity of the parties; invalidity of the underlying agreement; an award beyond the scope of the arbitration agreement; improper composition of the arbitration panel; and an award that has not yet become binding, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made. *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 934-35 (D.C. Cir. 2007) (citing New York Convention, art. V). Based on the court's review of the record presented, none of the grounds for refusal or deferral of recognition specified in Article V of the Convention are present in this case.

---

[6] The petitioners delivered their pleadings to "Ministry of Public Works, Transport and Telecommunication, Republic of Albania, Sheshi 'Skenderbej' No. 5, Tirana, Albania." *See* Aff. in Supp. of Default, Exs. A, B. This address corresponds with the address listed on the website of the Albanian Ministry of Transport & Telecommunication, http://www.mpptt.gov.al (then follow the "Kontakto" hyperlink).

Article VI of the Convention, however, provides the court the discretion to defer confirmation of an arbitration award if there is a pending action in another jurisdiction to set aside the award, such as the action commenced by Albania before the Court of Appeals in Rome.[7] *See Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998) (citing New York Convention, art. VI). Article VI states that

> [i]f an application for the setting aside or suspension of the award has been made to a competent authority . . . the authority before which the award is sought to be relied upon *may, if it considers it proper,* adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

New York Convention, art. VI (emphasis added).

Although this Circuit has yet to address the scope of the court's discretion under Article VI, other Circuits have stressed that in exercising this discretion, the court must "balance the Convention's policy favoring confirmation or arbitral awards against the principle of international comity embraced by the Convention." *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1172 (11th Cir. 2004) (citing *Europcar Italia*, 156 F.3d at 317-18). The Second Circuit has articulated a non-exhaustive list of six factors that a district court should consider when deciding whether to adjourn confirmation proceedings pursuant to Article VI of the Convention:

(1) the general objectives of arbitration – the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

---

[7] The petitioner does not dispute that the action commenced by Albania in Rome is "an application for the setting aside or suspension of the award" made to a "competent authority." *See* Petrs' Mot. at 8-10.

9

(4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;

(5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security" and that, under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country . . . ; and

(6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

*Europcar Italia*, 156 F.3d at 317-18. The court observed that "[b]ecause the primary goal of the Convention is to facilitate the recognition and enforcement of arbitral awards, the first and second factors on the list should weigh more heavily in the district court's determination." *Id*. at 318. Furthermore, the court cautioned that "[a] stay of confirmation should not be lightly granted lest it encourage abusive tactics by the party that lost in arbitration." *Id*. at 317 (citing *Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 106 (1st Cir. 1995)).

The first *Europcar* factor considers whether imposing a stay of the proceedings would undermine the objectives of arbitration – namely, the prompt and inexpensive resolution of disputes. *See id.* In this case, Albania agreed to binding arbitration. *See* Contract Agreement § 29.2. The arbitration proceeding, in which Albania fully participated, resulted in an arbitral award in favor of the petitioners. *See generally* Weisburg Decl., Ex. A. The arbitral tribunal noted that the Arbitral Award resulted from "a complex international arbitration . . . [that] involved almost three years of preparation and work." *Id*. at 32. Albania pursued a post-arbitration appeal in the ICA, which was rejected. *See* Petrs' Mot. at 3. Despite these favorable

rulings in the forum agreed to by Albania, the petitioners have yet to receive any satisfaction, nearly four years after commencing arbitration. *See id.* at 1-3. Accordingly, the first *Europcar* factor plainly weighs in favor of confirmation rather than an adjournment. *See In re Arbitration Between Interdigital Commc'ns Corp. & Samsung Elecs. Co.*, 528 F. Supp. 2d 340, 361-62 (S.D.N.Y. 2007) (concluding that the first *Europcar* factor weighed "overwhelmingly" in favor of enforcement because "it [was] beyond doubt that adjourning enforcement of the Award while this Court awaits the conclusion of what is likely to be yet another protracted and fiercely contested arbitration proceeding would seriously undermine" the objectives of arbitration).

The second *Europcar* factor also weighs in favor of confirmation. The petitioners assert that the Italian appeal proceedings are likely to last until 2014. *See* Weisburg Decl. ¶ 15; Petrs' Status Report (Mar. 2, 2010). In the absence of any counter-assertion from Albania, the court credits the petitioners' estimation of the duration of these proceedings. *See Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008) (observing that in evaluating a motion for default judgment against a foreign state, the court may accept as true the plaintiffs' uncontroverted evidence, including evidence by affidavit) (citing *Elahi*, 124 F. Supp. 2d at 100).

Furthermore, the court notes that the Court of Appeals in Rome declined to set aside the Arbitral Award on an interim basis. *See* Petrs' Status Report (Mar. 2, 2010); *see also MGM Prods. Group, Inc. v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772, 778 (S.D.N.Y. 2003) (observing that a Swedish court's denial of interim relief strengthened the court's determination that a stay was unwarranted). The court also takes notice of the fact that the foreign proceeding was commenced by Albania to set aside the Arbitral Award. *See Europcar Italia*, 156 F.3d at 317-18; *Sarhank Group v. Oracle Corp.*, 2002 WL 31268635, at *3 (S.D.N.Y. Oct. 9, 2002) (noting that "[t]he fact that the pending foreign appeal seeks to set aside, not enforce, the award

weighs in favor of enforcement in spite of the parallel proceedings ongoing in the originating country"), *vacated on other grounds*, 404 F.3d 657 (2d Cir. 2005).

Because the balance of the relevant factors[8] weighs in favor of immediate enforcement, an adjournment of these proceedings is unwarranted. Thus, the court is persuaded that the New York Convention authorizes confirmation of the Arbitral Award.

### C. The Court Adopts the Petitioners' Calculation of the Amount of the Arbitral Award

The Restatement provides that

> [i]f, in a case arising out of a foreign currency obligation, the court gives judgment in dollars, the conversion from foreign currency to dollars is to be made at such rate as to make the creditor whole and to avoid rewarding a debtor who has delayed in carrying out the obligation.

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 823; *see also McKesson Corp. v. Islamic Republic of Iran*, 116 F. Supp. 2d 13, 38 (D.D.C. 2000) (adopting the Restatement approach), *rev'd in part on other grounds, McKesson HBOC, Inc. v. Islamic Republic of Iran*, 271 F.3d 1101 (D.C. Cir. 2001). Thus, "if the foreign currency has depreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of injury or breach." RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 823 cmt. c. If, on the other hand, "the foreign currency has appreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of judgment or the date of payment." *Id.* Courts will ordinarily apply the exchange rate prevailing at the forum. *Id.*

The Arbitral Award awarded the petitioners a total of €12,822,018.15 and $474,101.32. *See* Weisburg Decl., Ex. A at 33. The petitioners represent that the Euro has depreciated since the Arbitral Award was issued, when the obligation at issue here arose. *See* Petrs' Mot. at 12

---

[8] The court has been presented with nothing to indicate that the balance of hardships, the level of scrutiny that the Arbitral Award will receive in the Italian appeal proceedings or any other consideration tips the balance in favor of adjournment. *See generally* Petrs' Mot.

12

n.3. Accordingly, the court will convert the portion of the Arbitral Award awarded in Euros into dollars by applying an exchange rate of 1.5747, which was the New York Federal Reserve's Euro-to-Dollar exchange rate on July 28, 2008, the date of the Arbitral Award. *See* Federal Reserve Statistical Release, Foreign Exchange Rates, http://www.federalreserve.gov/releases/h10/Hist/dat00_eu.txt; *see also Fridlund v. Spychaj-Fridlund*, 2009 WL 4168192, at *2 (E.D. Ky. Nov. 23, 2009) (calculating damages using the exchange rate reported by the Federal Reserve); *Jackson v. People's Republic of China*, 550 F. Supp. 869, 874 (N.D. Ala. 1982) (converting damages suffered in British pounds to dollars using the Federal Reserve exchange rate). As a result, the court confirms the Arbitral Award in the total amount of $20,664,933.30.

**D. The Court Denies Without Prejudice the Petitioners' Request for Prejudgment Interest**

This Circuit has stated that "[w]hether pre-judgment interest is to be awarded is subject to the discretion of the court and equitable considerations." *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C. Cir. 1997) (quoting *Motion Picture Ass'n of Am., Inc. v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992)). "The purpose of such awards is to compensate the plaintiff for any delay in payment resulting from the litigation." *Id*.

The "decision on how to compute prejudgment interest is discretionary with the district court." *Forman v. Korean Air Lines Co.*, 84 F.3d 446, 450 (D.C. Cir. 1996). The Circuit has expressly approved the use of the prime rate for determining prejudgment interest. *See id.* (noting the Circuit's agreement "with many of our sister circuits that the use of the prime rate for determining prejudgment interest is well within the district court's discretion"). Courts in this district have also applied the annual Treasury Bill Rate to calculate prejudgment interest. *See Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216, 265 (D.D.C. 2008)

(applying the average annual Treasury Bill Rate to calculate prejudgment interest but noting that "an average of the prime rate[] also would have been justified").

The petitioners have requested an interest award of $344,300.44, representing compound interest calculated at 2.33% from July 28, 2008 to the date they filed their motion. *See* Petrs' Mot. at 12 n.3. The court is persuaded that an award of prejudgment interest in this case would be fully consistent with the accepted purposes of such an award. *See Oldham*, 127 F.3d at 54; *see also Pugh*, 530 F. Supp. 2d at 265 (observing that an award of "prejudgment interest [was] particularly appropriate in this case because of the substantial delay in judgment for these plaintiffs caused by Libya's persistent delay tactics over the course of this litigation"). The petitioners, however, have failed to explain why a compound interest rate of 2.33% is an appropriate measure of prejudgment interest in this case. *See generally* Petrs' Mot. Accordingly, the court denies without prejudice the petitioners' request for prejudgment interest.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part without prejudice the petitioners' motion for default judgment and confirmation of arbitral award and confirms the Arbitral Award in the amount of $20,664,933.30. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 16th day of March, 2010.

RICARDO M. URBINA
United States District Judge